IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BRIAN BARTOLOWITS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:13-CV-4666-D |
| VS. | § | |
| | § | |
| WELLS FARGO BANK, N.A., AS | § | |
| TRUSTEE FOR OPTION ONE | § | |
| MORTGAGE LOAN TRUST | § | |
| 2007-FXD1, AS TRUSTEE OF CCC, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

Plaintiff Brian Bartolowits ("Bartolowits") sues defendant Wells Fargo Bank, N.A. ("Wells Fargo")[1] on claims arising from Wells Fargo's attempts to foreclose on his homestead after Bartolowits became delinquent on his property taxes. Wells Fargo moves for summary judgment. For the reasons explained, the court grants Wells Fargo's motion as to all of Bartolowits' claims except for part of his negligent hiring and supervising claim.

I

Bartolowits owns 13.1 acres of land in Johnson County, Texas, 8.6 acres of which are his homestead.[2] In September 2006 Bartolowits obtained a home equity loan from Option

---

[1]Wells Fargo is the defendant in its capacity as Trustee for Option One Mortgage Loan Trust 2007-FXD1, as Trustee of CCC. For ease of reference, the court will refer to Wells Fargo as the defendant without differentiating between its various roles.

[2]In deciding this motion, the court views the evidence in the light most favorable to Bartolowits as the summary judgment nonmovant and draws all reasonable inferences in his

One Mortgage Corporation ("Option One") in the amount of $228,000.  As part of the loan transaction, Bartolowits executed a home equity note and a deed of trust.  The deed of trust encumbered Bartolowits' 13.1 acres to secure repayment of the loan.  Shortly after the closing, the parties determined that the deed of trust should have only encumbered 8.6 acres, not the entire 13.1 acres.  To correct this error, Option One executed a partial release of lien, releasing its lien on 4.4 acres of the 13.1 acres, which was recorded in the Johnson County real property records.  Option One then assigned its interest in the loan to Wells Fargo and Wells Fargo hired Specialized Loan Servicing LLC ("SLS") to service Bartolowits' loan.

In January 2010 Johnson County tax authorities filed suit against Bartolowits seeking recovery of delinquent taxes owed from 2006 to 2008 on the 13.1 acres, which were comprised of four parcels for tax purposes—a one acre tract, another one acre tract, an 11.16 acres tract, and a mobile home—and seeking foreclosure of tax liens on each of the identified parcels.  Bartolowits filed an answer in that suit generally denying all of the allegations.  It is undisputed that Bartolowits did not pay his property taxes for multiple years.  In May and June 2010, without notifying Bartolowits, SLS paid the amount demanded by Johnson County (approximately $34,000) for the delinquent taxes owed on Bartolowits' four tax parcels.  Johnson County then dismissed its lawsuit.  SLS charged the $34,000 to Bartolowits, requiring him to repay the amount in equal installments over a 12-month period.

---

favor. *See, e.g., Owens v. Mercedes-Benz USA, LLC*, 541 F.Supp.2d 869, 870 n.1 (N.D. Tex. 2008) (Fitzwater, C.J.) (citing *U.S. Bank Nat'l Ass'n v. Safeguard Ins. Co.*, 422 F.Supp.2d 698, 701 n.2 (N.D. Tex. 2006) (Fitzwater, J.)).

Bartolowits maintains that SLS improperly advanced funds for taxes owed on unencumbered property, and that he only owed about $17,000 in taxes on the encumbered 8.6 acres.

Beginning in September 2010, Wells Fargo refused to accept Bartolowits' monthly payments because they were not made in full—that is, the payments included principal and interest, but not escrow charges for taxes.  Bartolowits failed to reimburse SLS for taxes paid on his behalf, and he defaulted on his repayment obligation under the loan.  In October 2010 SLS sent Bartolowits a notice of default and intent to accelerate letter.  Bartolowits failed to cure his default.  In June 2011 Wells Fargo initiated a judicial foreclosure action pursuant to Tex. R. Civ. P. 736, seeking to foreclose on Bartolowits' 13.1 acres, but the suit was dismissed for want of prosecution.  The parties agree that Wells Fargo could not have foreclosed on the entire 13.1 acres because part of the property was not secured by the deed of trust.  In September 2013 Wells Fargo instituted a second foreclosure action, seeking to foreclose on Bartolowits' 8.6 acres encumbered by the deed of trust.

Bartolowits then filed the instant suit, alleging claims for breach of contract, declaratory judgment,[3] common law fraud, statutory fraud in a real estate transaction, under Tex. Bus. & Com. Code Ann. § 27.01 (West 2015), negligent misrepresentation, negligent

---

[3]Following removal, in his amended petition ("amended complaint"), Bartolowits asserts his declaratory judgment claim under Texas law.  Am. Compl. ¶ 16.  "When a declaratory judgment action filed in state court is removed to federal court, that action is in effect converted into one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."  *Redwood Resort Props., LLC v. Holmes Co.*, 2007 WL 1266060, at *4 (N.D. Tex. Apr. 30, 2007) (Fitzwater, J.) (citing *i2 Techs. US, Inc. v. Lanell*, 2002 WL 1461929, at *7 n.5 (N.D. Tex. July 2, 2002) (Fish, C.J.)).  Accordingly, the court will treat the declaratory judgment action as if it is asserted under the Federal Declaratory Judgment Act.

hiring and retention, punitive and exemplary damages, and wrongful debt collection practices under the Texas Debt Collection Act ("TDCA"), Tex. Fin. Code Ann. § 392.001 *et seq.* (West 2006). In addition to actual and punitive damages, Bartolowits seeks declaratory relief that Wells Fargo has not complied with the terms of the note and deed of trust, that Wells Fargo should not be allowed to foreclose on his property, that Wells Fargo's request for late fees, a higher interest rate, and attorney's fees should be denied, and that he has incurred costs and reasonable and necessary attorney fees in seeking declaratory judgment. At the time this lawsuit was filed, Bartolowits' property has not been foreclosed on, and he remains in possession of the property. Bartolowits also owes the payment due September 1, 2010 on his loan and all subsequent monthly payments.

Wells Fargo moves for summary judgment on all of Bartolowits' claims. Bartolowits opposes the motion.

II

When the summary judgment movant will not have the burden of proof on a claim at trial, it can obtain summary judgment by pointing the court to the absence of evidence on any essential element of the nonmovant's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once it does so, the nonmovant must go beyond his pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *See id.* at 324; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The nonmovant's failure to produce proof

as to any essential element renders all other facts immaterial. *See TruGreen Landcare, L.L.C. v. Scott*, 512 F.Supp.2d 613, 623 (N.D. Tex. 2007) (Fitzwater, J.). Summary judgment is mandatory where the nonmovant fails to meet this burden. *Little*, 37 F.3d at 1076.

III

Wells Fargo contends that it is entitled to summary judgment dismissing Bartolowits' breach of contract claim on the ground that he materially breached his obligations under the deed of trust before Wells Fargo allegedly breached the deed of trust.[4]

A

Under Texas law, "a claim for breach of contract requires a showing of (1) the existence of a valid contract, (2) that the plaintiff performed his duties under the contract, (3) that the defendant breached the contract, and (4) that the plaintiff suffered damages as a result of the breach." *Cuthbertson v. Am. Fed'n of Gov't Emps.*, 2011 WL 1427634, at *1 (N.D. Tex. Apr. 13, 2011) (Fitzwater, C.J.) (citing *Lewis v. Bank of Am. NA,* 343 F.3d 540, 544-45 (5th Cir. 2003) (Texas law)). "[W]hen one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam); *see also Lennar Corp. v. Markel Am. Ins. Co.*, 413 S.W.3d 750, 755 (Tex. 2013) ("Generally, one party's breach does not excuse the other's performance unless the breach is material.").

_____

[4]Bartolowits objects to parts of Wells Fargo's summary judgment evidence consisting of certain exhibits and portions of the declaration of Michael Ward. The court overrules these objections as moot because they relate to evidence that the court has not relied on in reaching its decision.

B

Wells Fargo contends, *inter alia*, that Bartolowits' claim for breaching the loan documents should be dismissed because he first breached the loan documents in the following two ways.  First, under the deed of trust, Bartolowits was required to "pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument" by "pay[ing] to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ('Funds') for yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property" or by "pay[ing] them on time directly to the person owed payment."  D. App. 41. Wells Fargo maintains that Bartolowits breached this section by failing either to escrow his property taxes and pay them to Wells Fargo, or to timely pay his property taxes directly to the Johnson County tax authorities.  As support, Wells Fargo points to Bartolowits' deposition testimony in which he stated that he "can't be for sure" if he paid his 2007 taxes, that he "didn't think [he] was current on 2008 taxes," that he "didn't pay" his 2009 taxes, and that he "was behind" on his 2010 taxes.  *Id.* at 142.

Second, under the deed of trust, Bartolowits was required to "promptly discharge any lien which has priority over this Security Instrument."  *Id.* at 41.  Wells Fargo posits that Bartolowits breached this obligation by failing to promptly discharge the tax liens on his 8.6 acres secured by the deed of trust.  Wells Fargo posits that, as a result of Bartolowits' failure to pay multiple years of taxes on the 8.6 acres secured by the deed of trust, tax liens were placed on this property by operation of law, putting Wells Fargo's lien at risk of being

extinguished.  Wells Fargo also cites Bartolowits' deposition testimony concerning how he handled getting behind on his taxes, and whether he tried to work with the Johnson County tax office.  Bartolowits testified that he "[j]ust didn't pay the amount" for his 2008 taxes, that he "didn't do anything to . . . pay the taxes" for 2009, and that he did the "[s]ame thing" for his 2010 taxes.  *Id.* at 142-43.  Additionally, Wells Fargo points out that Johnson County eventually filed suit against Bartolowits seeking recovery of the delinquent property taxes and foreclosure of the tax liens, and that, rather than pay his delinquent taxes, Bartolowits filed an answer in that suit generally denying his obligation to pay the past due taxes.

Bartolowits does not dispute that the note and deed of trust are valid contracts between the parties, that the deed of trust required him to pay his taxes on the 8.6 acres and promptly discharge the tax liens placed on the 8.6 acres, or that he failed to pay his taxes and discharge the tax liens.   Bartolowits appears to argue only that his breaches were not material, without explaining how the breach was immaterial or providing any case law in support.

- 7 -

C

The only issue presented is whether either of Bartolowits' breaches (i.e., his failure

to pay the taxes owed on his property secured by the deed of trust, or his failure to promptly

discharge the tax liens placed on his property secured by the deed of trust) is material.  Texas

courts "follow[] the restatement of contracts in determining the materiality of a breach."

*Allied Capital Partners, LP v. Proceed Tech. Res., Inc.*, 313 S.W.3d 460, 464 (Tex. App.

2010, no pet.) (citing *Mustang Pipeline Co.*, 134 S.W.3d at 196; Restatement (Second) of

Contracts § 241, 242 (1981)).  In determining whether a breach is material, courts consider

various circumstances, including "the extent to which the injured party will be deprived of

the benefit which he reasonably expected, the extent to which he can be adequately

compensated for the loss of that benefit, and the extent to which the breaching party will

suffer forfeiture."  *Id.* (citing Restatement (Second) of Contracts § 241).[5]

---

[5]The Restatement (Second) of Contracts instructs courts to consider the following
circumstances when determining whether a failure to perform is material:

> (a) the extent to which the injured party will be deprived of the
> benefit which he reasonably expected;

> (b) the extent to which the injured party can be adequately
> compensated for the part of that benefit of which he will be
> deprived;

> (c) the extent to which the party failing to perform or to offer to
> perform will suffer forfeiture;

> (d) the likelihood that the party failing to perform or to offer to
> perform will cure his failure, taking account of all the
> circumstances including any reasonable assurances;

Considering these factors, the court holds that a reasonable jury could only find that Bartolowits' failure to pay taxes on his secured property was a material breach of the deed of trust.[6]  Because for multiple years Bartolowits failed to pay his property taxes on the 8.6 acres secured by the deed of trust, tax liens attached to this property by operation of law.  *See* Tex. Tax Code Ann. §§ 31.02(a) (Vernon 2015) ("[T]axes . . . are delinquent if not paid before February 1 of the year following the year in which imposed."), 32.01(a) ("On January 1 of each year, a tax lien attaches to property to secure the payment of all taxes, penalties, and interest ultimately imposed for the year on the property, whether or not the taxes are imposed in the year the lien attaches.").  And these tax liens took priority over Wells Fargo's lien.  *See id.* at § 32.05(b)(1) ("[A] tax lien provided by this chapter takes priority over the claim of any creditor of a person whose property is encumbered by the lien.").  Further, Johnson County's suit against Bartolowits to foreclose on its tax liens put Wells Fargo's lien at risk of being extinguished.  *See Kothari v. Oyervidez*, 373 S.W.3d 801, 807-08 (Tex. App. 2012, pet. denied) (citing cases; Tex. Tax. Code Ann. §§ 34.02-.04 (Vernon Supp. 2011))

---

> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

Restatement (Second) of Contracts § 241 (2015).

[6]Because the court concludes that a reasonable jury could only find that Bartolowits materially breached the deed of trust by failing to pay taxes on the property encumbered by the deed of trust, it need not also determine whether a reasonable jury could only find Bartolowits' failure to promptly discharge the tax liens placed on his secured property also constituted a material breach.

("Under Texas law, generally, if, after a valid foreclosure of a senior lien, a junior lien is not satisfied from the proceeds of a sale, then the junior lien is extinguished," and "[t]his general rule is in accord with the Tax Code provisions."). Thus, as a result of Bartolowits' failure to pay his taxes on the secured property, as required by the deed of trust, Wells Fargo was deprived of the benefit that it reasonably expected—its priority-lienholder status. And it was not certain that Wells Fargo could be adequately compensated for the part of that benefit of which it was deprived, given that Bartolowits had failed to pay his taxes on the secured property for multiple years, Johnson County had filed suit to foreclose on its tax liens, and Bartolowits generally denied his obligation to pay the past due taxes.

Moreover, the court in *Blanco National Bank v. Gonzalez*, 2013 WL 1760604 (Tex. App. Apr. 24, 2013, no pet.) (mem. op.), reached a similar conclusion. In that case, Blanco National Bank made Gonzalez two loans, both of which involved execution of a lien note and a deed of trust. *Id.* at *1. These loan documents required, among other things, that Gonzalez timely pay all taxes on the properties and preserve the bank's priority-lienholder status. *Id.* Gonzalez failed to pay his taxes as required by the loan documents, and the bank accelerated the loan and sought to foreclose. *Id.* Gonzalez then sued the bank, asserting a breach of contract claim. *Id.* at *2. The court held that the evidence was insufficient to support Gonzalez's breach of contract claim against the bank because Gonzalez failed to tender performance—that is, he failed to pay his property taxes for multiple years and his failure to do so caused the bank to lose its priority-lienholder status. *Id.* at *3-5.

Accordingly, Bartolowits' breach of contract claim is dismissed on the ground that

a reasonable jury could only find that Bartolowits materially breached the deed of trust before Wells Fargo committed an alleged breach.

IV

Wells Fargo moves for summary judgment on Bartolowits' declaratory judgment claim. Bartolowits contends that the court should resolve the parties' dispute over the meaning of terms in the deed of trust: the notice requirements in § 4; whether late fees and other fees assessed by Wells Fargo were in compliance with the deed of trust; whether § 7 allowed Wells Fargo to pay taxes on property not secured under its deed of trust, and then demand reimbursement as a condition of restatement; and whether § 18 allowed Bartolowits to reinstate the loan without paying the funds advanced by Wells Fargo for property not secured by the deed of trust. Because the court later resolves all of these issues in Wells Fargo's favor, it dismisses Bartolowits' declaratory judgment claim.

V

Wells Fargo moves for summary judgment dismissing Bartolowits' common law fraud claim on the ground that he has no evidence supporting this claim.[7]

The elements of common law fraud in Texas are:

(1) a material representation was made; (2) it was false when

---

[7]To the extent that Wells Fargo is relying on Fed. R. Civ. P. 9(b) to support its summary judgment motion, it has waived its right to challenge the sufficiency of Bartolowits' common law fraud claim under Rule 9(b). *See* Fed. R. Civ. P. 12(h). The court will instead treat this as a challenge to the sufficiency of the *evidence*, rather than the sufficiency of the *pleadings*, as does Bartolowits. *See* P. Br. 23 ("The attached summary judgment evidence identifies the required elements for fraud.").

- 11 -

made; (3) the speaker either knew it was false, or made it
without knowledge of its truth; (4) the speaker made it with the
intent that it should be acted upon; (5) the party acted in
reliance; and (6) the party was injured as a result.

*Choe v. Bank of Am., N.A.*, 2013 WL 3196571, at *5 (N.D. Tex. June 25, 2013) (Fitzwater,

C. J.) (quoting *Fluorine On Call, Ltd. v. Fluorogas Ltd.*, 380 F.3d 849, 858 (5th Cir. 2004)

(Texas law) (citations omitted)), *aff'd*, 605 Fed. Appx. 316 (5th Cir. 2015).   Bartolowits

avers that Anthony Forsberg ("Forsberg"), a Wells Fargo Assistant Vice President, made

multiple false statements in Wells Fargo's application for expedited foreclosure proceedings

under Tex. R. Civ. P. 736 (the "Rule 736 application"), including: Bartolowits failed to make

principal and interest payments from September 2010 through May 2011; the requisite

notices to cure and of default were provided; the debt was secured by Bartolowits' 13.1

acres; and Forsberg reviewed the business records of Wells Fargo.   But Bartolowits has

failed to raise a fact issue on the element of reliance.

     To recover on a fraud claim, a plaintiff must show actual and justifiable reliance.  *See,*

*e.g., Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010).

To determine whether reliance is justifiable, the court "must inquire whether, 'given a fraud

plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at

or before the time of the alleged fraud[,] it is extremely unlikely that there is actual reliance

on the plaintiff's part.'"  *Id.* (quoting *Haralson v. E.F. Hutton Grp., Inc.*, 919 F.2d 1014,

1026 (5th Cir. 1990) (applying Texas law)).   A plaintiff "'may not justifiably rely on a

representation if there are 'red flags' indicating such reliance is unwarranted.'"  *Id.* (internal

quotation marks omitted) (quoting *Lewis*, 343 F.3d at 546 (applying Texas law)).

Concerning Bartolowits' allegation that Forsberg misrepresented that Wells Fargo's loan was secured by his 13.1 acres, Bartolowits cannot show reliance because "[i]t is well-established that '[t]he recipient of a fraudulent misrepresentation is not justified in relying upon its truth if he knows that it is false or its falsity is obvious to him.'" *Nat'l Prop. Holdings, L.P. v. Westergren*, 453 S.W.3d 419, 424 (Tex. 2015) (per curiam) (quoting Restatement (Second) of Torts § 541 (1977)); *see also Mayes v. Stewart*, 11 S.W.3d 440, 451 (Tex. App. 2000, pet. denied) (citation omitted) ("Actual knowledge is inconsistent with the claim that the defrauded party has been deceived, and it negates the essential element of reliance upon the truth of the representation."). The record shows that Bartolowits knew the representations were false when made. In his response, Bartolowits avers that he

> sent Wells Fargo written notice along with supporting documents, including the lien release showing that Wells Fargo did not have a security interest in all 13.16 acres. Wells Fargo reviewed the documents and responded that it had . . . the right [to] foreclose on all 13.16 acres. Wells Fargo then attempted to do so in a Rule 736 Foreclosure suit.

P. Br. 4.

Additionally, Bartolowits cannot show that he justifiably relied on the other misrepresentations because "'[g]enerally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context.'" *Mikob Props., Inc. v. Joachim*, 468 S.W.3d 587, 598 (Tex. App. 2015, pet. denied) (quoting *AKB Hendrick, LP v. Musgrave Enters., Inc.*, 380 S.W.3d 221, 232 (Tex.

- 13 -

App. 2012, no pet.)).  Forsberg's alleged misrepresentations were made in an adversarial context because they were made in the Rule 736 application, which was filed in state court in Wells Fargo's 2011 foreclosure suit against Bartolowits.

Because no reasonable jury could find that Bartolowits relied on Wells Fargo's representations, the court dismisses Bartolowits' common law fraud claim.

## VI

Wells Fargo moves for summary judgment dismissing Bartolowits' claim for statutory fraud in a real estate transaction on the basis that he lacks evidence to prove the elements of this claim.  In his response, Bartolowits does not address this argument or his statutory fraud claim, and he states that he has "not respond[ed] to claims that should be dismissed."  P. Resp. 2.  Although Bartolowits' failure to respond to this ground of Wells Fargo's motion does not permit the court to enter a "default" summary judgment on Bartolowits' statutory fraud claim, *see, e.g., Tutton v. Garland Independent School District*, 733 F. Supp. 1113, 1117 (N.D. Tex. 1990) (Fitzwater, J.), "[a] summary judgment nonmovant who does not respond to the motion is relegated to [his] unsworn pleadings, which do not constitute summary judgment evidence," *Bookman v. Shubzda*, 945 F. Supp. 999, 1002 (N.D. Tex. 1996) (Fitzwater, J.) (citing *Solo Serve Corp. v. Westowne Associates*, 929 F.2d 160, 165 (5th Cir. 1991)).  Moreover,

> [i]f a party fails . . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion [and] (3) grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show

that the movant is entitled to it[.]

Rule 56(e)(2), (3).  Accordingly, because Bartolowits has not raised a genuine issue of material fact as to his statutory fraud claim, the court dismisses this claim.

### VII

Wells Fargo moves for summary judgment dismissing Bartolowits' negligent misrepresentation claim. It points to the absence of evidence to support this claim.  In his response, Bartolowits does not respond to this argument or address his negligent misrepresentation claim.  As with Bartolowits' statutory fraud in a real estate transaction claim, the court dismisses his negligent misrepresentation claim because he has not raised a genuine issue of material fact.

### VIII

Wells Fargo moves for summary judgment dismissing Bartolowits' alternative claim for negligent hiring, supervision, and retention, contending that Bartolowits cannot established the required elements of this claim.[8]

### A

A negligence claim requires proof of a legal duty owed by the defendant to the plaintiff, a breach of that duty, and damages proximately caused by that breach.  *Lee Lewis Constr., Inc. v. Harrison*, 70 S.W.3d 778, 782 (Tex. 2001) (citing *Praesel v. Johnson*, 967

---

[8] Wells Fargo also maintains that Bartolowits' claim for negligent hiring, supervision, and retention is barred by the economic loss rule.  This claim, however, is pleaded in the alternative to Bartolowits' breach of contract claim.

S.W.2d 391, 394 (Tex. 1998)).  "An employer can be liable for negligence if its failure to use due care in hiring, supervising, or retaining an employee creates an unreasonable risk of harm to others."  *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 287 (Tex. App. 2015, no pet.) (citations omitted).  Although the Supreme Court of Texas "has yet to rule definitively on the 'existence, elements, and scope of [causes of action for negligent retention and supervision] and related torts such as negligent training and hiring,'" *id.* (alteration in original) (quoting *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 804 n. 27 (Tex. 2010)), "it has indicated that to recover on these theories, a plaintiff must show more than just negligent hiring practices," *id.* (citing *Wansey v. Hole*, 379 S.W.3d 246, 247 (Tex. 2012) (per curiam)).  "The plaintiff must also show [he] 'suffer[ed] some damages from the foreseeable misconduct of an employee' who was hired, supervised or retained pursuant to the defendant's negligent practices."  *Id.* (quoting *Wansey*, 379 S.W.3d at 247).

B

Bartolowits maintains that Wells Fargo negligently hired and failed to supervise Phillip Spann ("Spann"), who falsely stated in a letter to Bartolowits' attorney that the lien release and the deed of trust did not match.  But the evidence in the record clearly shows that Spann is an employee of SLS, not Wells Fargo.  A reasonable jury could not find that Bartolowits' allegations regarding Spann support this claim.

Bartolowits also contends that Wells Fargo negligently hired and failed to supervise Forsberg, the Assistant Vice President who allegedly made misrepresentations in the Rule 736 application in Wells Fargo's 2011 foreclosure suit that sought to foreclose on

- 16 -

Bartolowits' entire 13.1 acres.  Bartolowits avers, *inter alia*, that Forsberg misrepresented that Wells Fargo's debt was secured by the entire 13.1 acres, even though Wells Fargo had released 4.4 of those acres.  And Bartolowits asserts that he was damaged because his 4.4 acres, which Wells Fargo had no security interest in, were encumbered by Wells Fargo until August 2012, and he incurred attorney's fees for representation in the 736 foreclosure application to avoid the entry of a default order as to all 13.1 acres.

In reply, Wells Fargo does not challenge the sufficiency of the evidence supporting the elements of Bartolowits' negligent hiring and supervising claim as to Forsberg.  Rather, Wells Fargo raises two new challenges—that this claim is barred by the judicial proceedings privilege and the statute of limitations.  This court, however, will not consider arguments raised for the first time in a reply brief.  *See, e.g., Jacobs v. Tapscott*, 2006 WL 2728827, at *7 (N.D. Tex. Sept. 25, 2006) (Fitzwater, J.) (citing *Senior Unsecured Creditors' Comm. of First RepublicBank Corp. v. FDIC*, 749 F. Supp. 758, 772 (N.D. Tex. 1990) (Fitzwater, J.)) ("[T]he court will not consider an argument raised for the first time in a reply brief."), *aff'd*, 277 Fed. Appx. 483 (5th Cir. 2008).

Accordingly, because Bartolowits has raised a genuine issue of material fact as to whether Wells Fargo negligently hired and supervised Forsberg, the court denies Wells Fargo's summary judgment motion as to Bartolowits' negligent hiring and supervising claim.

IX

Wells Fargo moves on multiple grounds for summary judgment dismissing Bartolowits' wrongful debt collection practices claim under the TDCA.

A

Wells Fargo posits that any part of the TDCA claim based on action that Wells Fargo

took before October 24, 2011 is barred by the statute of limitations.  "Under Texas law,

limitations is an affirmative defense on which the [summary judgment] movant bears the

burden of proof."  *Elmo v. Oak Farms Dairy*, 2008 WL 2200265, at *1 (N.D. Tex. May 14,

2008) (Fitzwater, C.J.) (citing *Moriss v. Enron Oil & Gas Co.*, 948 S.W.2d 858, 867 (Tex.

App. 1997, no writ)).  To be entitled to summary judgment on a defense on which the party

moving for summary judgment will have the burden of proof at trial, the party "must

establish 'beyond peradventure all of the essential elements of the . . . defense.'"  *Bank One,*

*Tex., N.A. v. Prudential Ins. Co.*, 878 F. Supp. 943, 962 (N.D. Tex. 1995) (Fitzwater, J.)

(quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)).

The parties agree that TDCA claims are governed by a two-year statute of limitations,

and because Bartolowits filed this lawsuit on October 24, 2013, any part of his TDCA claim

based on action taken by Wells Fargo before October 24, 2011 is time-barred.  But they

disagree about whether the 2011 foreclosure suit falls within the limitations period.  Wells

Fargo contends that a TDCA claim based on the 2011 foreclosure suit is time-barred because

the lawsuit was filed on June 11, 2011, and Bartolowits has not pointed to any event that

occurred in the suit on or after October 24, 2011, except that the court dismissed the suit due

to inactivity.  Bartolowits does not allege that any events, other than dismissal for want of

prosecution, occurred in the 2011 foreclosure suit on or after October 24, 2011; rather,

without citing any cases in support, he appears to argue that a TDCA claim based on the

2011 foreclosure suit is timely because the suit was not dismissed until August 24, 2012. Bartolowits' claim accrued, however, when the alleged violation occurred. *See McCrimmon v. Wells Fargo Bank*, *N.A.*, 516 Fed. Appx. 372, 375 n.6 (5th Cir. 2013) (per curiam) ("[C]laims for violations of the TDCA would have accrued whenever the improper debt-collection activities took place."); *see also Williams v. Chase Home Fin., LLC*, 2014 WL 46233, at *4 (N.D. Tex. Jan. 6, 2014) (Fish, J.) ("Assuming that the foreclosure sale constituted a violation of [the TDCA], the statute of limitations began to run on [the date of the foreclosure].").  By introducing unrefuted evidence that the parties took no action in the 2011 foreclosure suit on or after October 24, 2011, Wells Fargo has met its burden of demonstrating beyond peradventure that any TDCA claim based solely on its actions in the 2011 foreclosure suit is time-barred.

Bartolowits avers that Wells Fargo violated § 392.301(a)(7)[9] and § 392.301(a)(8)[10] of the TDCA by attempting to take property not secured by its deed of trust in order to hold him liable for debt for which he was not liable, and without first obtaining a judgment attaching personal liability to him that could then be attached to his unsecured property.  It is undisputed that the only time Wells Fargo attempted to take Bartolowits' unsecured

---

[9]Section 392.30(a)(7) provides that "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ . . . threatening that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings."

[10]Section 392.30(a)(8) provides that "[i]n debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ . . . threatening to take an action prohibited by law."

property was in the 2011 foreclosure suit.  Because Bartolowits relies solely on the 2011 suit to support these claims, Wells Fargo has met its burden of showing that these claims are time-barred.

Wells Fargo has not met its burden with respect to Bartolowits' other alleged TDCA violations because it has not established beyond peradventure that Bartolowits relies exclusively on the 2011 foreclosure suit, or other events that occurred before October 24, 2011, in support of these claims.  Accordingly, only Bartolowits' § 392.301(a)(7) and § 392.301(a)(8) claims are dismissed as time-barred.

B

Wells Fargo contends that it is not liable under the TDCA because any purported act was the result of a bona fide error.  Under the TDCA, "[a] person does not violate this chapter if the action complained of resulted from a bona fide error that occurred notwithstanding the use of reasonable procedures adopted to avoid the error."  Tex. Fin. Code Ann. § 392.401.  As the creditor, the burden of proving the bona fide error defense is on Wells Fargo.  *See CA Partners v. Spears*, 274 S.W.3d 51, 71 (Tex. App. 2008, pet. denied) (citations omitted) ("However, in order to utilize this defense, the debt collector must show that reasonable procedures were used to prevent the error which caused the violation in question.").  Because Wells Fargo will have the burden of proof at trial, to obtain summary judgment, it must satisfy the heavy "beyond peradventure" standard.  *See, e.g., Bank One*, 878 F. Supp. at 962 (N.D. Tex. 1995) (Fitzwater, J.); *Carolina Cas. Ins. Co. v. Sowell*, 603 F.Supp.2d 914, 923-24 (N.D. Tex. 2009) (Fitzwater, C.J.).

Wells Fargo posits that SLS had reasonable procedures to ensure that its counsel foreclosed on the proper collateral, including having foreclosure counsel conduct a title search as part of the preparation of an application to proceed with foreclosure.  But Wells Fargo has not presented evidence that this procedure was followed in this case.  Additionally, Wells Fargo maintains that in this case SLS provided various loan servicing documents to Wells Fargo's foreclosure counsel, including the note, deed of trust, and transaction history.  But Wells Fargo has not established beyond peradventure that these actions were taken pursuant to an SLS standard procedure.  Accordingly, Wells Fargo has not met its heavy

- 21 -

burden of establishing beyond peradventure that any error was a bona fide error.  It is not entitled to summary judgment on Bartolowits' TDCA claim based on a bona fide error defense.

### C

Wells Fargo maintains that Bartolowits lacks evidence to support a viable claim under any of the alleged sections of the TDCA.

### 1

Section 392.304(a)(12) prohibits a debt collector, in debt collection or obtaining information concerning a consumer, from"us[ing] a fraudulent, deceptive, or misleading representation that employs . . . representing that a consumer debt may be increased by the addition of attorney's fees, investigation fees, service fees, or other charges if a written contract or statute does not authorize the additional fees or charges."  Bartolowits posits that Wells Fargo violated § 392.304(a)(12) by advancing funds for taxes on unsecured property, by increasing his debt to account for the total amount of taxes paid, and by failing to notify him before paying property taxes on his behalf.

### a

Wells Fargo avers that the deed of trust authorized it to pay all of Bartolowits' delinquent taxes, add the tax liability to his debt, and require him to repay that amount.  As the court has already explained, the deed of trust required Bartolowits to "pay all taxes . . . attributable to the Property which may attain priority over this Security Instrument." D. App. 41.  Bartolowits breached this provision of the deed of trust by failing to pay property taxes

on his 8.6 acres encumbered by the deed of trust.  Consequentially, tax liens attached to

Bartolowits' property, encumbering the 8.6 acres and subordinating Wells Fargo's lien.  And

Johnson County filed suit against Bartolowits seeking, *inter alia*, foreclosure of the tax liens,

putting Wells Fargo's subordinate lien at risk of being extinguished.

Further, § 7 of the deed of trust provides:

> [i]f Borrower fails to perform the covenants and agreements
> contained in this Security Instrument, or there is a legal
> proceeding that may significantly affect Lender's rights in the
> Property . . . then Lender may do and pay for whatever is
> necessary to protect the value of the Property and Lender's
> rights in the Property.

*Id.* at 42-43.  And "[a]ny amounts disbursed by Lender under this paragraph 7 shall become

additional debt of Borrower secured by this Security Instrument," and "these amounts shall

bear interest from the date of disbursement" and "shall be payable, with interest, upon notice

from Lender to Borrower requesting payment."  *Id.* at 43.  Because Bartolowits breached the

deed of trust by failing to pay taxes on the secured property, and Johnson County filed a suit

against Bartolowits that put Wells Fargo's lien at risk of being extinguished, Wells Fargo

was authorized under § 7 to do and pay for whatever was "necessary" to protect its rights in

the 8.6 acres encumbered by the deed of trust, and to add to Bartolowits' debt the amount

expended in doing so.

Wells Fargo maintains it was necessary to pay the full amount ($34,000) demanded by Johnson County in the tax suit—which included taxes for the 13.1 acres and the mobile home—to protect its lien position.  As support, it points to Bartolowits' citation in the tax suit, in which Johnson County states that the suit would not be dismissed until the court costs and the claim were "paid in full."  *Id.* at 60.  Wells Fargo further contends that no evidence showed where within the three tax parcels the 8.6 acres were located, and that Bartolowits even admitted that the 8.6 acres were not assigned a new tax account number when he separated this acreage from his other property. Wells Fargo also contends that, after it paid Bartolowits' taxes, Johnson County dismissed the suit.

Bartolowits contends, however, that it was not necessary for Wells Fargo to pay taxes on his unencumbered property (i.e., the 4.4 acres that were released, and the mobile home). Bartolowits maintains that Wells Fargo could have determined the proper amounts owed on the encumbered 8.6 acres, and he provides the property tax records for parcel number 126-0180-0030, showing that the taxes on the encumbered 8.6 acres were only $17,000.  But as Wells Fargo points out, the property tax records relied on by Bartolowits are dated October 9, 2015, and this parcel number was associated with an 11.1 acres tract at the time the taxes were paid, not the 8.6 acres tract.  Further, even if the taxes for the 8.6 acres could have been determined, Bartolowits has not adduced evidence that would enable a reasonable jury to find that Johnson County would have released its lien and dismissed the tax suit as to the encumbered 8.6 acres if Wells Fargo had paid only $17,000.  Accordingly, Bartolowits has not raised a fact issue as to whether it was necessary for Wells Fargo to pay the $34,000, add

- 24 -

that amount to Bartolowits' debt, and require Bartolowits to pay that amount.

b

Wells Fargo asserts that it was not required to give Bartolowits notice before paying his delinquent taxes.  Bartolowits contends, however, that § 4 of the deed of trust required Wells Fargo to notify him before paying property taxes on his behalf.  He relies on the last paragraph in § 4:

> Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument.  If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender *may* give Borrower *a notice* identifying the lien.  Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

D. App. 41 (emphasis added).  Bartolowits avers that the use of "may" in the next to the last sentence gives Wells Fargo discretion to notify him about any potential lien, but that there is no discretionary language allowing the lender to take an action without notice to the borrower. Thus Bartolowits contends that the last sentence should be interpreted to require Wells Fargo to notify him and allow him 10 days to take actions listed in § 4 before taking any action itself, such as paying property taxes.

The plain language of § 4 is clear.  *See Valence Operating Co. v. Dorsett*, 164 S.W.3d

- 25 -

656, 662 (Tex. 2005) (citations omitted) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."). The next to last sentence states that Wells Fargo "may" give Bartolowits "*a* notice," and the last sentence, by stating "*the* giving of notice," refers to the notice mentioned in the preceding sentence. Thus the notice in the last sentence is not mandatary, and when read in conjunction with the preceding sentence, it states that if Wells Fargo gives Bartolowits notice of a lien, then Bartolowits has 10 days to satisfy the lien or take actions listed in § 4. This reading of § 4 is supported by § 7, which permits Wells Fargo to "do and pay for whatever is necessary to protect the value of the Property and Lenders' rights in the Property," without requiring notice to Bartolowits. *See id.* (citations omitted) ("In construing a written contract . . . courts should examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless."); *see also Sturges v. Suntrust Mortg., Inc.*, 539 Fed. Appx. 580, 583 (5th Cir. 2013) (per curiam) (holding that two similar sections in deed of trust used permissive "may" in laying out lender's remedial options, giving lender two options: "provide notice and require borrower to take an approved action to satisfy or contest the lien" or "pay any sums secured by a lien which has priority over this Security Instrument") (alteration omitted). Bartolowits therefore has not raised a fact issue on whether Wells Fargo was required to give him notice before paying his delinquent taxes.

Accordingly, the court grants Wells Fargo's summary judgment motion as to Bartolowits' § 392.304(a)(12) claim.

2

Section 392.303(a)(2) prohibits a debt collector, in debt collection, from "us[ing] unfair or unconscionable means that employ . . . collecting or attempting to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer." Bartolowits avers that Wells Fargo violated this section by attempting to collect late fees after refusing payment, and attempting to collect and attach $17,000 to his homestead.

The court has already held that no fact issue exists with respect to whether Wells Fargo was authorized by the deed of trust to pay Bartolowits' delinquent taxes in full ($34,000), to add that amount to his debt, and to require him to repay that amount. In the note, Bartolowits agreed to pay a late charge if Wells Fargo "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due." D. App. 8. Bartolowits attempted to pay the principal and interest on the loan, but not the full monthly payment that included the charges for escrow to repay the advances for taxes. Because Bartolowits failed to pay his full monthly payments, Wells Fargo was expressly authorized to assess late charges on him. And Bartolowits does not contend that the late charges exceeded the amount prescribed by the note. No reasonable jury could find that Wells Fargo violated the deed of trust by charging Bartolowits late fees.

Moreover, because Bartolowits breached the deed of trust, Wells Fargo was authorized to seek a court order authorizing foreclosure after providing Bartolowits with the

requisite notices.[11]  Bartolowits appears to contend that he was never notified in writing that Wells Fargo considered his tax suit a default.  But Wells Fargo has presented evidence that Bartolowits was provided a "notice of default and notice of intent to accelerate" letter dated October 19, 2010, stating that "[t]he Note on the above referenced loan is now in default as a result of your failure to pay the 09/01/10 payment and the payments due each month thereafter," and that "[t]he amount required to cure the arrears as of 10/19/10 is $40,341.74." D. App. 19.  As Bartolowits points out in his response, the amount required to cure his default in this notice included the full $34,000 paid in taxes.  Further, the evidence in the record shows that Bartolowits responded to the notice of default in letters dated November

---

[11] The deed of trust states, in pertinent part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument. . . .  The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice will result in acceleration of the sums secured by this Security Instrument and sale of the Property.  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.  If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law.

D. App. 45.

16, 2010 and November 30, 2010, which acknowledge that he received the notice, state that he is currently unable to pay the full amount of taxes paid on his behalf, and contend that the notice incorrectly required him to pay the full amount of taxes.  Moreover, Bartolowits does not allege specifically how the notice of default letter that he received violates the deed of trust.  Thus no reasonable jury could find that Wells Fargo violated the deed of trust by giving Bartolowits inadequate notice of default, and by seeking a court order authorizing foreclosure on his property that was encumbered by the deed of trust.

Bartolowits also appears to contend that Wells Fargo violated the deed of trust by seeking a court order for foreclosure without allowing him to reinstate the loan by paying the amount due under the deed of trust or by curing any default.  Section 18 of the deed of trust permits Bartolowits to reinstate if, by a certain time, he:

> (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged.

D. App. 44.  Bartolowits maintains that he attempted to reinstate the loan by offering to pay Wells Fargo $17,000—the amount he contends he owed for taxes on the 8.6 acres—but Wells Fargo refused the offer, demanding that he pay the full $34,000.  As the court has discussed above, Wells Fargo was authorized to demand repayment of the $34,000, and it

- 29 -

did not violate § 18 by refusing to accept only partial payment of that amount.  Thus no reasonable jury could find that Wells Fargo violated the deed of trust by failing to allow Bartolowits to reinstate the loan, and filing a judicial proceeding to foreclose on his property.

Accordingly, the court grants Wells Fargo's motion for summary judgment on Bartolowits' § 392.303(a)(2) claim.

3

Section 392.304(a)(8) provides that "in debt collection or obtaining information concerning a consumer, a debt collector may not use a fraudulent, deceptive, or misleading representation that employs . . . misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding."  Bartolowits contends that in Wells Fargo's 2011 and 2013 lawsuits seeking foreclosure—specifically in the Rule 736 applications and verified pleadings—Wells Fargo at a minimum misrepresented the debt, security interest, amount secured, and the scope of its lien.

As discussed above, Wells Fargo has met its burden of showing that Bartolowits' allegations regarding the Rule 736 application in the 2011 foreclosure suit are time-barred.  With respect to the 2013 foreclosure suit, Bartolowits does not allege any misrepresentations, other than ones the court has already discussed, and Bartolowits has therefore failed to raise a fact issue on whether Wells Fargo's Rule 736 application and verified pleading in its 2013 foreclosure suit contain any misrepresentations.

Accordingly, Wells Fargo is entitled to summary judgment on Bartolowits' §

392.304(a)(8) claim.

4

Section 392.304(a)(14) prohibits a debt collector, in debt collection or obtaining information concerning a consumer, from "us[ing] a fraudulent, deceptive, or misleading representation that employs . . . representing falsely the status or nature of the services rendered by the debt collector or the debt collector's business."  Wells Fargo asserts that Bartolowits lacks evidence to support this claim.  Bartolowits does not address this argument or this claim in his response.  It is not clear whether the complaint alleges a violation of this section, but to the extent that it does, the court grants Wells Fargo's motion for summary judgment on Bartolowits' § 392.304(a)(14) claim.

5

Section 392.304(a)(19) prohibits a debt collector, in debt collection or obtaining information concerning a consumer, from "us[ing] a fraudulent, deceptive, or misleading representation that employs . . . using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."  Bartolowits contends that his arguments and evidence presented in support of his other alleged TDCA violations also support this claim.  Because the court has held that a reasonable jury could not find that Wells Fargo violated any of the other applicable sections of the TDCA, the court grants Wells Fargo's summary judgment motion as to Bartolowits' § 392.304(a)(19) claim.

\*   \*   \*

For the reasons explained, Wells Fargo's motion for summary judgment is granted as

to all of Bartolowits' claims except for part of his claim for negligent hiring and supervising.

**SO ORDERED**.

April 11, 2016.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE